DONNER v. AMERICAN SHEET & TIN PLATE CO.

(Circuit Court of Appeals, Third Circuit. November 20, 1908.)

No. 31.

PATENTS (§ 328*)—INVENTION—METHOD OF ROLLING BLACK-PLATE.

The Donner patent No. 620,541, for a method and mechanism for rolling black-plate by means of sets of rolls arranged in a continuous train, discloses nothing new of utility in the art, it having been proved in practice that in continuous rolling the plates in the stack stick together and produce scrap to such a degree as to make such rolling commercially unsuccessful, and no means of preventing such result being shown in the patent. Claim 4 is also void for lack of novelty.

[Ed. Note.—For other cases, see Patents, Dec. Dig. § 328.*]

Appeal from the Circuit Court of the United States for the Western District of Pennsylvania.

James K. Bakewell, Charles Neave, and Charles MacVeagh, for appellant.

Kay, Totten & Winter, for appellee.

Before GRAY and BUFFINGTON, Circuit Judges, and CROSS, District Judge.

BUFFINGTON, Circuit Judge. In the court below, Percy E. Donner, assignee of patent No. 620,541, granted February 28, 1899, to W. H. Donner, for rolling black-plate, filed a bill, charging infringement, against the American Sheet & Tin Plate Company. In an opinion reported at 160 Fed. 971, that court held the fourth claim thereof valid and infringed. From a decree in pursuance thereof, the latter company appealed to this court.

This patent concerns sheet-rolling mills. In such mills the general and almost universal practice both prior to this patent and since was and is as recited in the patent, as follows:

"To feed the bars through a set of two-high rolls and then return them over their tops for the next pass, the screws of the rolls being successively adjusted to bring the rolls closer together for each pass. This operation is continued until the iron is too cold to roll, when the packs are returned to the furnace, and being reheated are then given a second series of reductions until they are rolled sufficiently long for doubling, when they are doubled and returned to the furnace, these operations being continued until the desired gauge is obtained."

The succeeding stages of the operation need not be detailed. The object the patentee had in view is stated in the specification as follows:

"The object of my invention is to provide a plant and method of working the metal whereby the time and labor consumed in passing the metal back over the rolls is obviated, and the iron reduced more rapidly and without changing the adjustments of the rolls, * * * and to obtain a continuous plant wherein the various sets of rolls are maintained at substantially the same temperature by reason of the metal passing there—through in a continuous or regular manner, thus giving more accurate sheets and reducing the liability of breaking the rolls."

It should here be stated that after the sheets are reduced in gauge by rolling back and forth four times, which is the customary number of initial passes, they are laid one upon the other to form packs. This process is called "matching," and is an intermediate operation in sheet-rolling. The entire operation of sheet-rolling, including the preliminary rolling of individual sheets and the subsequent rolling of packs, Donner sought to accomplish by a continuous mill, which is one where the entire process of rolling goes forward continuously, and without subjecting the sheets to any return over the rolls so that they may repass through them. Complainant's expert tersely defines a continuous mill as a "plant wherein a separate set of reducing rolls is employed for each reduction." By this process it will be seen there is no adjustment of the rolls for the several passages as in the old process, but a single adjustment takes place for the single passage, which alone is made through each stand of rolls. The advantages incident to a use of a continuous mill the patentee thus enumerated:

"The advantages of my invention will be apparent to those skilled in the art, since the labor and time of reducing the metal are greatly decreased, a greater number of reductions can be given before reheating the pack, and the number of workmen is materially reduced. Since I use one pair of rolls for each reduction instead of making several reductions on one mill, the reductions are more uniform and accurate than where the adjustments are being continually changed. The adjustments of the tensions of the rolls which regulate these reductions are made easy for an unskilled workman, whereas the ad-

justment by the ordinary method heretofore used requires the close attention of a skilled roller. The packs being fed to the rolls in a continuous and regular manner, the rolls are kept at a substantially uniform temperature, and hence at about the same contour or shape, giving more accurate sheets than formerly and avoiding breakage of the rolls by reason of contracting and expanding thereof."

The patentee's particular form of mill, shown in the accompanying cut:

—consisted, in so far as is now pertinent to note, of four sets of two-high rolls set tandem with feed tables or conveyors between each set. At a sufficient distance from the last of the four sets, to allow matching of the sheets, which individually had had the four customary passes, two additional sets of two-high rolls were set tandem. The process up to and including the operation of the last two sets of rolls is thus described:

"In the drawings, A represents a heating furnace having chambers 2, 3, and 4, in which the bars are heated. This furnace may be provided with one or as many chambers as desired. When the bars are brought to the proper heat in this furnace, they are taken to a continuous mill D, consisting of several sets of two-high rolls, of which I have shown six sets, arranged in tandem, numbered, respectively, 5, 6, 7, 8, 9 and 10, each set of rolls being provided with a feed-table or conveyor, 11, which is shown as consisting of a series of sprocket-chains passing over positively-driven sprocket-wheels at their ends, though other forms of positively-driven feed-tables may be employed, if desired. I have shown the sprocket-wheels at one end of the feed-table chains as mounted upon a shaft having bevel-gear connections with a shaft, 28, extending alongside the continuous mill, though these chains may be driven by any other desired mechanism. The metal being placed upon the first feed-table passes through the set of rolls 5, and being reduced therein emerges upon the second feed-table, which carries it to the rolls 6, in which it receives a further reduction, and thence passes on in a similar manner through the sets of rolls 7 and 8. The next set of rolls, 9, is spaced a sufficient distance from the set 8 so that the plates may be matched at this point, if desired, the feed-table between rolls 8 and 9 being correspondingly lengthened for this purpose. To stop the plates upon the table between the rolls 8 and 9, I show tilting fingers, 29, arranged between the chains near the end of this table and arranged to be swung into upper position to stop the metal or into lowered inoperative position by a lever, 30. From roll 9 the metal passes through set 10, and on emerging from this set of rolls the metal, which has now been reduced to a suitable gauge for doubling, emerges upon a feed-table, 12."

Upon this device claim 4, which reads as follows:

"In a plant for rolling black-plate, a continuous train in which two of the sets of rolls are sufficiently removed from each other to allow the bars or sheets to be matched between said sets of rolls, substantially as described"—

was granted.

The proofs in this case satisfy us of the great advantages and desirability of the continuous rolling of sheets, but they equally satisfy us that this patentee neither disclosed anything novel in his patent, or showed successful means of continuous sheet-rolling. The continuous mill of Howell, described and illustrated in the "Iron Age" on August 13, 1891, embodied a device containing all the elements of Donner's fourth claim. In this publication was a horizontal section which showed four sets of two-high rolls, which Howell called a blooming mill. Two of these sets were each mounted in separate, parallel, reverse tandem form as shown in the accompanying cut, to which we have added a line showing the course traveled by the sheets:

The Howell Sheet Mill.—Fig. 1.—Blooming Mill.

Fig. 2.—Continuous Train.

The published description of Howell's process is as follows:

"With the object of eliminating the item of cost by skilled labor, Mr. Howell proposed a continuous train with its blooming mill, which would be in charge of one skilled man, the other help needed being common labor. In the blooming mill, Fig. 1, the slab or ingot is taken from the furnace 'A,' and is passed through the first set of rolls, as indicated by the arrow, and is put back through a second set, receiving two reductions for each movement until reduced to $1/8$ inch thickness. It then goes to the shears 'E,' is cut and packed, and at the same heat is taken to the continuous train, Fig. 2, on a buggie. The passage through the continuous train is indicated by arrows. The train is built in detachment, so as to have control of the speed of the several groups, the strip to leave one set of rolls at about the time it enters the next in order to avoid the complications often incident to continuous mills. The entire system of rolls is in one plane and there is no lifting of the piece, and only the lateral movement of it from the first to the second set of rolls of the blooming train. The blooming and continuous trains are placed in close proximity. The six engines required from this method would not be costly, since the train may be made to run at one-half or one-third of the speed of the engine. The trouble in gearing a continuous train from one engine has been that the speed of each pair of rolls cannot be changed at will to accommodate the stretch of the piece. By having the rolls detached in groups the engines may be speeded to suit the elongation of the strip. With this train strips of suitable widths for making cans may be rolled in long lengths and coiled, instead of boxing them. While the cost of skilled labor alone on a tin sheet mill by present methods is $12 for No. 30 W. G., Mr. Howell estimates the cost of this method at not more than $2."

From this it will be seen that roll No. 1 is a two-high stand through which the sheet passes once, goes forward to rolls No. 2, and passes once. From No. 2 stand the sheet is passed laterally to stand No. 3, through which the sheet passes once and goes forward to rolls No. 4, which it passes once. This is the forward process characteristic of a continuous mill. There is no return or passing of the sheet a second time through the same stand of rolls, and consequently no readjustment of the rolls to make a thinner gauge. This is not only clear from the diagram, but as the article says:

"The entire system of rolls is in one plane and there is no lifting of the piece, and only the lateral movement of it from the first to the second set of rolls of the blooming train."

After receiving the customary four passes, the sheet is reduced to a size suitable for matching, and Howell's plan showed space where such matching could be done before the metal passed in pack form through the other rolls of his continuous mill. From this it will be seen that each element of Donner's fourth claim was present in Howell's device, viz., a continuous mill, two sets of rolls, sufficient space between the sets to permit matching. Howell's device, if used after Donner's patent, would clearly infringe the fourth claim, and, being earlier, it as clearly anticipates. Moreover, as stated above, the proofs satisfy us the patent in suit disclosed no practical method by which sheets could be successfully rolled in a continuous mill. It is true the specification claimed sundry advantages would result from the use of a continuous mill, but the patentee disclosed no means by which those results could be secured, and the use of continuous mills has shown such predicted results did not follow. The proof is that in continuous rolling the packs stick and produce scrap to such a degree

as to make such rolling commercially unsuccessful. Cronemeyer, a
sheet manufacturer of great experience, says:

"We always knew that packs of sheets could be rolled in a continuous mill;
but the question was not whether we could roll it, but whether we could bring
out the product economically.  *  *  *  The trouble with us always was to
get out a product that wouldn't stick. We have had the theory in that respect
all right for a long time, but in practice it won't work out.  *  *  *  It is the
continuous rolling of the pack without creating too much scrap that has been
the question which, so far as I know, no one yet solved to-day."

Indeed, this is proved by complainant himself, who, in speaking of
a mill of respondent's alleged to use the patented process, says:

"The scrap in the Monongahela continuous mill is very much in excess of
that in the practice of the old-fashioned single-stand mills.  *  *  *  The dif-
ficulty of roll contour had to be contended with, and, as it has taken more or
less experimenting to determine just how the rolls of a continuous mill should
be turned, there was much scrap produced through what you might say were
destroyed packs. I have seen numerous packs stick together so tight that
they could not be opened and had to be sheared up as scrap."

Of the difficulties attending the use of a continuous mill, Crone-
meyer says:

"We took packs of sheets and rolled them on the stands of rolls, which we
had standing side by side, moving them from the first pair, second pair, third
pair, and so on, and giving them a pass through the different sets of rolls.
Then we brought out the finished pack and tried to open it; that is, tried to
separate the sheets. We found that nearly all of them were so tightly stuck
together, or nearly welded together, that we could not separate them. This
circumstance, we found, was due to the fact that the rolls in the different
stands had a different contour, and that pressure was exerted on the sheets in
the various places of the sheets; and also to the fact that we did not separate
the sheets during the process of rolling, which is customary to do when we roll
on the single-stand mill, but which we knew could not be done if we would
roll on a continuous mill.  *  *  *  The effect would be an excessive amount
of scrap and defective sheets; and the process would not be economical; that
is, the advantages gained by the greater product which a continuous mill can
put out would be largely offset by the amount of scrap."

This roll contour difficulty, at present apparently a fundamental
obstacle to successful continuous rolling, Cronemeyer thus explained:

"The surface of the rolls, also, we may try to get them exactly, will always
vary more or less nevertheless, because the hot metal coming in contact with
different rolls or with the different metal in those sets of rolls will cause dif-
ferent effects. In that way the one roll may have a slightly elevated portion
which does not exist in the next roll in the same place, and wherever these
elevations exist the sheets will be pressed harder than in other places. The
friction, and consequently the heat, is hotter in these places, and consequently
the sheets will stick in the spots that have come in contact with such eleva-
tion in the second or third roll, while if they pass through the same roll the
pressure on that same line of the sheet will always remain the same; but all
of this is only a theory of mine, which I could not positively prove; but the
fact remains that sheets rolled in the manner described will stick closer to-
gether than in the ordinary way."

So, also, a very clear statement of the roll contour difficulty is given
by Julian Kennedy, one of the foremost and most reliable of mill en-
gineers in the profession, who says:

"Prof. Langley, in his answer to Q. 9, points out some of the difficulties in
rolling tin plate, the most important one being the difficulties incident to main-

taining the rolls at a proper heat so as to preserve their cylindrical form. He speaks of the rolls being turned up slightly concave so that when in regular work the center of the roll will become somewhat warmer than the ends, the roll will acquire as nearly as possible a truly cylindrical form, and claims in general that by using tandem mills the rolls can be kept in a more uniform condition than where the rolling is done on a single stand of rolls. Unfortunately, in practice this does not work out, for the simple reason that in the use of a single stand of rolls it is possible for a certain error in contour to exist without doing very much harm, whereas if the pack as it nears finishing has one pass through a pair of rolls which is either too hollow or too convex, and the next pass through a perfect pair of rolls, very much heavier pressures will be set up in this latter pass either on the edges or the center of the pack, as the case may be, than would be the case if the pack was sent a second time through the first pair of rolls. In other words, if a pair of rolls be, for example, slightly too much convex and a pack be put through these rolls several times in succession, screwing down on the roll each time, there will be manifestly much less tendency to extreme local pressure than there would be where one pass of the pack is through such convex rolls and the next pass through a truly cylindrical pair of rolls. If we take the case of one pair of rolls convex and the next succeeding pair of rolls concave, this bad action is very much intensified; so that with a given error the contour of one set of rolls and an opposite error in the succeeding one—that is, one convex and one concave—the abnormal pressure developed in certain parts of the pack and the tendency toward sticking and buckling incident thereto will be much greater than in the case where a single pair of rolls is used, even if the error in their contour were two or three times as great as in the case of the tandem rolls. Again, he states that with a single pair of rolls it is necessary for the roller to watch carefully and so manipulate the rolls as to keep their contour as nearly correct as possible, which in some cases involves allowing the rolls to cool slightly by slowing the operation of the mill. In the case of tandem rolls, it often happens that one set of rolls should be cooled a little in order to correct its contour, while the succeeding set of rolls should be warmed up a little, or vice versa. For this reason, while sheet-mill men have never doubted that it would be possible to roll packs on different sets of rolls in succession, they have been doubtful as to whether the well-known advantages of increase in output and lightening of manual labor would compensate for the increased amount of scrap and wasters produced by giving each pass in the reduction of a pack in an independent set of rolls; and my observation and all the information that I can gather tells me that up to the present all experimenting which has been done in this direction has not overcome this trouble to the extent of saving more cost due to the more rapid work and less labor as it lost owing to increased sticking and buckling of the plate."

Kennedy sums up his conclusions by saying:

"It is my understanding that they have not as yet been able to show any commercial advantage in the use of these mills over that obtained by the use of the older style of mills, where the pack rolling is done by a single stand."

Moreover, it is to be noted that the patentee in his specification as heretofore quoted claimed that proper roll contour was secured by the uniform temperature incident to the use of a continuous mill. In that respect his specification says:

"The packs being fed to the rolls in a continuous and regular manner, the rolls are kept at a substantially uniform temperature, and hence at about the same contour or shape, giving more accurate sheets than formerly, and avoiding breakage of the rolls by reason of contracting and expanding thereof."

But this statement disclosed nothing new, for in his prior patent, No. 615,535, Donner had made substantially the same statement. There, speaking with reference to irregular temperature and roll con-

tour and of the effect of rolling the packs in a continuous mill, he said:

"My invention overcomes these difficulties; and it consists in roughing in one mill and then passing the metal packs in a regular or continuous manner through a finishing mill or mills so that the finishing rolls will be continuously maintained at about the same temperature. It also consists in passing the metal continuously or regularly through the roughing rolls, thus maintaining these rolls continuously at the same temperature as well as in passing the metal simultaneously or continuously through both roughing and finishing rolls."

Now, concededly, the patent gives no instruction whatever upon the contour of the rolls, or how they should be turned to get good results, and when complainant was inquired of on that point his only answer was:

"I think any one skilled in the art would appreciate the fact that some experimenting along this line would be necessary in actual practice in order to determine the exact amount of concavity for the various sets of rolls to produce the finest possible results."

Taking this as the best and strongest answer that can be made of the statutory requirement that the patentee shall make a written description of his invention or discovery, "in such full, clear * * * and exact terms as to enable any person skilled in the art * . * * to make, construct * * * and use the same," we are of opinion, in the face of strong and uncontradicted proof of those skilled in the art, that the problem of roll contour has not been solved—that the disclosures of this patent are not of the practical and useful character the law makes the consideration for the grant of a patent monopoly. The evidence satisfies us the problem of continuous sheet-rolling was neither solved nor disclosed by this patent, and that to sustain this patent would not be to reward invention, but to block further experiment and development, for here, as was said in Deering v. Harvester Works, 155 U. S. 286, 15 Sup. Ct. 118, 39 L. Ed. 153:

"In view, not only of the prior devices, but of the fact that his invention was of doubtful utility and never went into practical use, the construction claimed would operate to the discouragement rather than the promotion of inventive talent."

This patent has left no impress on the art; the patentee or those under him have built and operated no such mill and proved its utility. While the respondent has constructed two continuous sheet mills, one has ceased operations, and the other, while improved by important devices outside the elements of this claim, is evidently experimental in character in that its use emphasizes the failures and defects of Donner's device, which has left no impress on an art, which still continues in sheet-rolling to employ the methods of the old practice.

In accord, therefore, with the views expressed above, we hold the fourth claim invalid, the decree below be reversed, and the case remanded with instructions to dismiss the bill.